# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | * | |
| | * | |
| vs. | * | Case No: 1:08cr-00029-MEF/TFM |
| | * | |
| **JASON EVERETT WALKER, et al.,** | * | |
| | * | |
| Defendants. | * | |

## MOTION TO SUPPRESS EVIDENCE

*NOW COMES* the Defendant Jason Everett Walker [hereinafter Walker] and respectfully moves the Court to suppress all evidence obtained and seized as a result of the traffic stop which forms the basis of this case, and which was conducted by a reserve Midland City police officer on US Highway 231 in the city of Dothan, Houston County, Alabama, on the 24th day of February, 2007, and further moves the Court to exclude the fruits thereof as being incident to unlawful search and seizure, including (a) statements and testimony of the witnesses; (b) statements of any witnesses whose identity was discovered by the United States as a direct result and exploitation of the said searches; (c) any and all other items seized as a result of the search; and (d) any and all statements made by Walker to law enforcement agents.

In support of the requested relief, Walker states that he had an expectation of privacy with respect to the recreational van, so that the stop, seizure and subsequent searches of himself and the vehicle violated those rights in the following respects:

1. The initial stop of the vehicle was illegal;

2. The search of the vehicle was conducted :

    a. in violation of the Fourth Amendment of the United States Constitution as the

same is made applicable to the State of Alabama by virtue of the Fourteenth Amendment of the United States Constitution;

    b. in violation of Article I, Section V, of the Alabama Constitution;

    c. in violation of Alabama laws;

    d. in violation of controlling case law.

  3. More particularly, the search of the vehicle was illegal due to the following factors:

    a. the initial stop being made by a reserve municipal police officer acting outside the scope of his authority and his municipal's jurisdiction; and/or

    b. initial stop being made by a reserve municipal police officer acting from a mistake of law; and/or

    c. the subsequent search exceeded the scope of the initial stop for alleged drifting from the center line to the fog line and traveling too slowly;

    d. Walker was illegally detained after he had cooperated with law enforcement in all respects relating to the alleged traffic infraction;

    e. Walker was illegally detained for an unreasonable period of time after he had cooperated with the police officer in all respects relating to the alleged traffic infraction;

    f. the search was conducted without a warrant;

    g. the search was conducted without probable cause;

    h. the search was conducted without consent;

    i. the search was not reasonable or necessary under the circumstances.

**Facts**

[Since there has been no testimony given in this case, the facts alleged herein are taken from the discovery documents provided to Walker by the Government and the State of Alabama, including one incident report made out by Reserve Officer Isler [hereinafter also Isler] on February 24, 2007, a second report made out by Isler on February 26, 2007, the Midland City communications log.]

At about eight o'clock a.m. on Saturday morning of February 24, 2007, Midland City Reserve Police Officer James Isler and another reserve officer were trolling on US Highway 231, when Isler says he observed a tan recreational vehicle "drifting to the fog line and back to the center line". He says the vehicle then drifted to the outside line and slowed down "to a manner that impeded the flow of traffic."

Isler says he slowed down to initiate a traffic stop for "failure to maintain lane and impeding traffic". To do so, Isler first says he slowed down, pulled in behind the vehicle and turned on the blue lights to signal the driver to pull over, but in the next sentence he says he waited for a safe place to pull the vehicle over. According to the Midland City Police Department communications log, Officer Isler called in his intention to make the stop at 7:58 a.m.

At any rate, the motor home stopped at a business one and one-half miles inside the City limits of Dothan, even though Isler says his first observations of the motor home took place just south of a service station located about one half mile from the Houston County/ City of Dothan line.

Isler says he could clearly see both the driver and passenger as he approached the vehicle, and went to the exit door [which is on the passenger side of the motor home] to speak to the

driver. He says that when the door opened, he received the "distinct odor of marijuana". Isler asked for and was given the driver's license belonging to the van's operator, and a rental agreement from American Dream Vacations, which Isler noticed was in the name of Jason Walker. The driver explained that Walker was the passenger, so Isler asked for and received his identification, as well. Isler specifically notes that the passenger seemed "fatigued".

Next, Isler says he asked the driver to step to the rear of the vehicle while his license was being run by communications. Isler says he questioned the driver about the number of people in the motor home, the purpose for their trip and explained several times why the vehicle had been stopped, while he waited for the license response. Isler says the driver seemed to be anxious in his responses to the questioning, and that he had to tell the driver several times that failure to maintain lane was a possible indicator that the driver could be "under the influence, fatigued, or a vehicle malfunction".

Isler next says the driver's information came back as Lemont Norwood of Austin, Texas, but he does not report any suspicion regarding the identity or the legitimacy of the license. It is unclear from the reports when Isler received the report on the VIN number of the vehicle, but he does not report any discrepancies in that investigation.

Rather than presenting the driver with a ticket or further pursuing the alleged driving violation, and without giving the driver an opportunity to accept a traffic citation, Isler says he notified dispatch to call Dothan PD for a K9 unit. The Midland City communications log shows this call was made at 8:05 a.m.

Isler supplements or continues his original report with a second document dated February 26, 2007, wherein he states he asked his fellow reserve officer to stay with the driver while he questioned the passenger, who is Walker, and then explains how the traffic stop became a search

and seizure conducted [according to this report] by the Dothan Police officers and canine Prinz as he "stood at the entrance [of the motor home] while at the same time keeping both subjects under observation". He reports that when one of the Dothan officers showed him a 12 gauge shotgun and some packages wrapped in plastic and duct tape, Isler "walked back to the patrol car and then placed both subjects under arrest."

All the reports submitted by the Government variously identify Isler as the "reporting officer" and "seizing officer", but not as the arresting officer. All the reports purportedly made by Isler are type-written, but not signed [except for the evidence reports, but the signature is illegible] or counter-signed.

The communications log shows that Isler made a call at 8:45 to report that "**he** has found a large amount of cash and marijuana on these subjects from Texas and a shotgun". Although his supplemental report mentions the recovery of marijuana evidence that was not vacuum sealed, there is no property or scientific report of that evidence. His narrative report does not state when or where the currency was found. There is no visual documentation of Isler's reports, since he says the video equipment was not working on February 24, 2007.

### Alabama Law

*Reserve Police Officers*

In Alabama a Municipal Law Enforcement Officer means an official who is certified by the Alabama Peace Officers' Standards and Training Commission who has authority to make arrests and who is employed by any municipality in the state as a permanent and regular employee with law enforcement duties. That term does not include any person who is serving a probationary period of employment, or whose term has expired. *Ala. Code* §11-43-231 (1975), as amended.

Each city of town has the authority to appoint one or more reserve law enforcement officers to assist or aid full-time or part-time certified law enforcement officers. *Ala. Code* §11-43-210 (1975), as amended.

Reserve police officers' functions include patrol operation performed for the purpose of detection, prevention and suppression of crime or enforcement of the traffic or highway laws of the state, provided, however that he or she acts at all times under the direct control and supervision of a certified law enforcement officer. *Ala. Code* §11-43-230(c)(1) (1975), as amended. Reserve police officers may not exercise any authority of arrest unless he or she has completed the training requirements of the Alabama peace officers' standards and training commission, and he or she is not allowed to carry a firearm without a properly issued permit and approval of the municipality's appointing authority. *Ala. Code* §§11-43-230(d) and (e) (1975), as amended.

*Municipal Jurisdiction*

In Alabama, the police jurisdiction of cities or towns having less than 6000 in habitants extends to the adjoining territory within a mile and a half of the corporate limits of such city or town. *Ala. Code* §11-40-10 (1975).

*Lane Usage*

Section 32-5A-88(1) of the 1975 Alabama Code provides that, "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

*Traveling Too Slowly*

Section 32-5A-174 of the 1975 Alabama Code discusses the minimum speed at which a lawful driver in Alabama may operate his or her vehicle:

(a) No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law.

(b) Whenever the Director of Public Safety and the Highway Director, with the approval of the Governor, or local authorities within their respective jurisdictions determine on the basis of an engineering and traffic investigation that slow speeds on any highway or part of a highway consistently impede the normal and reasonable movement of traffic, the said directors or such local authority may determine and declare a minimum speed limit below which no person shall drive a vehicle except when necessary for safe operation or in compliance with law, and that limit shall be effective when posted upon appropriate fixed or variable signs.

*Detention of Motorist*

The Alabama Court of Criminal Appeals recently outlined the current law of our state relating to the reasonable length of time a motorist may be detained for a routine traffic stop and the reasonable depth of interrogation an officer can engage in without violating the motorists's Fourth Amendment rights:

> "With certain limited exceptions enumerated in subsection (b), and not here applicable, *Ala. Code* 1975, §§32-1-4 prohibits traditional custodial arrests for misdemeanor traffic offenses where the offender is willing to sign the UTTC. See *Sheffield v. State*, 522 So.2d 4, 7 (Ala. Cr. App. 1987); *Hays v. City of Jacksonville*, 518 So.2d 892, 893 (Ala. Cr. App. 1987). However, §§32-1-4(a) does permit 'limited detention or custody' of traffic offenders and, consequently, an officer may 'requir[e] a motorist to sit in a patrol car while the officer completes the [UTTC].' *Pittman v. State*, 541 So.2d 583, 585 (Ala. Cr. App. 1989) (citing *United States v. Parr*, 843 F.2d 1228, 1229-31 (9th Cir. 1988). The limited detention permitted by §§32-1-4(a) does not give rise to a search incident to arrest of either the motorist's person, *State v. Davis*, 477 So.2d 504, 506 n. 1 (Ala. Cr. App. 1985); *Thomas v. State,* 453 So.2d 1075, 1077 (Ala. Cr. App. 1984), or the motorist's vehicle, see *Morton v. State*, 452 So.2d 1361, 1364 (Ala. Cr. App. 1984), overruled on other grounds, *Cannon v. State*, 601 So.2d 1112 (Ala. Cr. App. 1992). While the officer may conduct a limited protective search for weapons of the motorist's person, *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and car, *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983), he 'must have an actual suspicion that weapons are present' in order to do so, *United States v. Lott*, 870 F.2d 778, 784 (1st Cir. 1989) (emphasis added). See generally 3 W. LaFave, Search and Seizure, §§§§9.4(a), (e) (2d ed. 1987).

> "Once the traffic offender signs the UTTC, the arresting officer is to 'forthwith release him from custody.' §§32-1-4(a). The officer may further detain the driver only if he has probable cause to arrest the driver for some other non-traffic offense, see *Hawkins v. State*, 585 So.2d 154 (Ala. 1991), or has a reasonable suspicion of the driver's involvement in some other criminal activity justifying further detention for investigatory purposes under *Terry v. Ohio*, see *United States v. Tapia*, 912 F.2d 1367 (11th Cir. 1990).

*State v. McPherson*, 892 So.2d 448 (Ala. Crim. App. 2004).

*Nervousness of Driver*

Alabama's appellate courts have clearly said nervousness cannot alone form the basis for reasonable suspicion to detain a suspect. See *State v. Washington*, 623 So.2d 392, 395 (Ala.Crim.App. 1993):

> "The prevailing view is that 'unless coupled with additional and objectively suspicious factors, nervousness in the presence of a police officer and/or failure to make eye contact do not establish reasonable suspicion to believe that the person is engaged in criminal activity".

*Id*, at 398. See also *Owen v. State*, 726 So.2d 745 (Ala. Crim. App. 1998) and *State v. McPherson*, 892 So.2d 448 (Ala. Crim. App. 2004), quoting *United States v. Chavez-Valenzuela*, 268 F.3d 719, 726 (9th Cir. 2001):

> "[N]ervousness during a traffic stop – even the **extreme nervousness** [the defendant] exhibited here – in the absence of other particularized, objective factors, does not support a reasonable suspicion of criminal activity, and does not justify an officer's continued detention of a suspect after he has satisfied the purpose of the stop. [The officer] lacked the requisite reasonable suspicion when he continued to detain [the defendant] after completing the traffic stop and asked him if he was carrying drugs, thereby violating [the defendant's] Fourth Amendment rights." [Emphasis added.]

*McPherson*, at 456-457.

*Eleventh Circuit Law*

The Eleventh Circuit Court of Appeals has held that no matter how reasonable or understandable a mistake of law, it cannot provide the objectively

reasonable grounds for reasonable suspicion or probable cause:

"A traffic stopped based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment. *Saucier v. Katz,* 533 U.S. 194, 205, 121 S. Ct. 2151, 2158, 150 L. Ed. 2d 272 (2001). *See also United States v. Gonzalez,* 969 F.2d 999, 1006 (11th Cir. 1992); *United States v. Garcia-Acuna,* 175 F.3d 1143, 1147 (9th Cir. 1999); *United States v. Lang,* 81 F.3d 955, 966 (10th Cir. 1996); *United States v. Shareef,* 100 F.3d 1491, 1503 (10th Cir. 1996); *United States v. Hatley,* 15 F.3d 856, 859 (9th Cir. 1994)."

................

"We also note the fundamental unfairness of holding citizens to "the traditional rule that ignorance of the law is no excuse," *Bryan v. United States*, 524 U.S. 184, 196, 118 S. Ct.1939, 1947, 141 L. Ed. 2d 197 (1998), while allowing those "entrusted to enforce"the law to be ignorant of it."

*United States v.Chanthasouxat*, 342 F.3d 1271, 1279 (11th Cir. 2003)

**Argument**

Walker believes and contends that Isler had no authority to make the stop of the vehicle in which he was traveling on February 24, 2007, because that officer was not certified under the requirements of *Ala. Code* §11-43-231 (1975), was not acting under the direct supervision of his appointing authority and was outside the police jurisdiction of Midland City, Alabama.

Furthermore, Walker believes and contends that Isler had no reasonable suspicion that the motor home had committed a violation of the traffic laws which Midland City has authority to enforce, or a traffic violation at all, since he never said the vehicle strayed from its own lane, but merely that it drifted from one edge of its own lane to the other "several times", and that it was going so slowly it was "impeding" traffic. Highway 231 is a four lane highway with no posted minimum speed in the area encompassed by Isler's report and/or observations, and at eight o'clock on a Saturday morning, it is highly unlikely there was enough traffic to "impede".

Even if Isler believed the vehicle had violated a traffic law, that belief was not based in Alabama law and was not reasonable.  He most likely revealed his reason for stopping the vehicle when he reported that he could see both the driver and passenger [who are black males] in the side-view mirrors, and Walker believes Isler made the call for the canine unit before he even had the vehicle stopped.

Walker contends Isler had no reason to detain and question him after receiving the driver's identification, since he was not the driver of the vehicle, or to request his driver's license, since  whether or not he, as the passenger, appeared fatigued had nothing to do with the alleged traffic offense.

Walker further contends the "distinct odor of marijuana" Isler mentions in his report is part of the officer's ruse to conduct an illegal search of the motor home, since those same reports show that all the contraband recovered was vacuum sealed and hidden within various compartments of the motor home.

Walker contends the alleged nervousness of the driver was not sufficient under Alabama law to impart reasonable suspicion to any police officer that Walker or the driver were engaged in criminal activity.

Finally, Walker contends Isler detained himself and the vehicle for such a long period after he could have issued a traffic citation, that the search and seizure were rendered illegal under controlling Alabama law.

*WHEREFORE,* Defendant Walker moves this Honorable Court to:

A.  Suppress and prohibit introduction of evidence concerning any statements or confessions made by him which are in the hands of the government;

B.  Suppress and prohibit introduction of evidence seized from the recreational vehicle on

February 24, 2007;

    C.  Suppress and prohibit introduction of any information or evidence gathered and/or learned by the Government after the illegal stop of the recreational vehicle on February 24, 2007;

    D.  Enter an order instructing the United States Attorney to refrain absolutely from making any direct or indirect inference whatever, either himself or through witnesses, to any statements made by Defendant to any police officers, or which are contained in any records or report made by state police officers or federal investigators;

    E.  Conduct a pretrial hearing in regard to this motion, and if the Court rules adversely to the Defendant as to any of the matters contained herein that the Court rule that the adverse ruling is deemed to be preserved and counsel relieved from having to re-raise the objection or motion in the presence of the jury.

    Respectfully submitted,

    **s/ Derek E.  Yarbrough**
**Derek E. Yarbrough**
Bar Number: ASB-6664-R63D
Attorney for Defendant Jason Walker
Motley, Motley & Yarbrough, LLC
Dan Clemmons Building
117 East Main Street
Dothan, Alabama 36301
Telephone:  (334) 793-0051
Fax: (334) 793-9845
E-mail: motley@graceba.net

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | * | |
| | * | |
| vs. | * | Case No: 1:08cr-00029-MEF/TFM |
| | * | |
| **JASON EVERETT WALKER, et al.,** | * | |
| | * | |
| Defendants. | * | |

### CERTIFICATE OF SERVICE

    I hereby certify that on April 22, 2008, the foregoing motion to suppress evidence was filed on behalf of Defendant Jason Everett Walker with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Matthew W. Sheppard  
U.S. Attorney's Office  
P.O. Box 197  
Montgomery, AL 36101-0197  
Telephone: 334-223-7280  
Facsimile: 334-223-7135  
Matthew.shepherd@usdoj.gov  

Tommie Brown Hardwick  
U.S. Attorney's Office  
P.O. Box 197  
Montgomery, AL 36101-0197  
Telephone: 334-223-7280  
Facsimile: 334-223-7135  
Tommie.hardwick@usdoj.gov  

and a copy has been mailed by United States Postal Service to the following non-CM/ECF participants: None

    **s/ Derek E. Yarbrough**  
    **Derek E. Yarbrough**  
    Bar Number: ASB-6664-R63D  
    Attorney for Defendant Jason Walker  
    Motley, Motley & Yarbrough, LLC  
    Dan Clemmons Building  
    117 East Main Street  
    Dothan, Alabama 36301  
    Telephone: (334) 793-0051 Facsimile 793-9845  
    E-mail: motley@graceba.net