IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 01:08CR00029-MEF-TFM |
| | ) | |
| LEMONT ISRAEL NORWOOD, et al. | ) | |

RESPONSE TO DEFENDANTS' MOTIONS TO SUPPRESS

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and hereby requests that this Honorable Court deny Defendants' Motions to Suppress. As defendant Norwood's motion argues only vague and general grounds for suppression of the evidence in this case and does not specifically state the issues presented, the United States submits this one response to both defendants' motions to suppress, responding specifically to the issues raised by defendant Walker. As grounds in support of this Response, the United States sets forth the following:

FACTS

On February 24, 2007, Investigator James Isler of the Midland City, Alabama, Police Department was on patrol on U.S. Route 231, in Midland City in Dale County. At the time, Isler was a full time police officer with Midland City and was certified to serve as a police officer. Reserve Police Officer Fareed Nayeem was present with Isler in the patrol car. Shortly before 7:58 pm, Isler observed a tan Recreational Vehicle ("RV") driving south on U.S. Route 231. Isler observed the RV swerving from the fog line to the center line. Isler also observed the vehicle slowing down to an unsafe speed that impeded traffic as it drifted towards the outside line. Isler initiated a traffic stop of the RV for having committing a violation of Alabama traffic regulations for failure to maintain

lane and impeding traffic.

When the RV stopped, Isler approached the passenger side where the door for the RV was located. When the door opened, Isler smelled a distinct odor of marijuana. Isler explained to the driver that he had stopped the vehicle because he saw it weaving from the center line to the outside line. The driver gave Isler his identification and a rental agreement for the RV. The RV was rented in the name of Jason Walker from a rental agency in Texas. Isler also requested that the passenger provide him with a driver's license which he provided. Isler requested the driver to exit the vehicle and step to the rear of the RV by his patrol car. There Isler questioned the driver about where he was coming from and the identity of the passenger. The driver stated he was a friend. Isler observed that the driver appeared anxious as he answered his questions about where he was coming from. From the driver's license check Isler determined that the driver was Lemont Israel Norwood. Isler requested of his dispatch that Dothan Police Department send a K9 unit to the scene. Isler then went and spoke to the passenger and learned that he was Jason Walker. Isler escorted Walker from the RV to his patrol car.

Shortly thereafter, the K9 unit arrived. The dog conducted a free air sniff of the RV and the dog alerted on the door to the RV. When asked, both Norwood and Walker stated they did not have any drugs in the RV. The police then conducted a search of the interior of the RV. In it they found several packaged and vacuum sealed bricks of marijuana, a loaded shotgun, a loaded pistol, scales, a vacuum sealer, shrink wrap, over $3,000.00 in cash, marijuana residue in the RV, and marijuana residue in a shop vac vacuum cleaner. The police took photographs of all of these items. Norwood and Walker were then arrested.

According to the Midland City Police Department dispatch logs, Isler started the stop at 7:58

pm. He requested a K9 unit from Dothan Police Department at 8:05 pm, which arrived at 8:12 pm. At 8:15 pm Isler received verification of the VIN number of the RV from his dispatch. At 8:45 pm, Isler reported finding marijuana, cash, and a gun.

## ANALYSIS

In their motion, the defendants seek to suppress the evidence seized during the traffic stop and search of defendants' RV on February 24, 2007.[1] The United States opposes the motion to suppress because law enforcement lawfully stopped and searched the RV and lawfully seized all evidence found within it.

### *I. Midland City Police Officers lawfully stopped the defendants' RV.*

As an initial matter, defendants dispute the legality of the traffic stop itself. However, the police lawfully stopped the RV because they had both probable cause to believe that the RV had committed a traffic offense and reasonable suspicion that it was engaged in illegal activity, both of which justified the stop.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996); see also United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999). The officers' subjective motivation in conducting the stop is irrelevant so long as there was objective probable cause to believe a traffic violation occurred. Whren v. United States, 517 U.S. at 813; see also Arkansas v. Sullivan, 532 U.S. 769 (2001); United States v. Holloman, 113 F.3d 192, 194 (11th

---

[1] Although Jason Walker was the passenger in the vehicle at the time it was stopped, his name was on the rental agreement and the Supreme Court has held that passengers in vehicles have standing to challenge the constitutionality of traffic stops conducted on vehicles in which they are passengers. Brendlin v. California, 127 S.Ct. 2400 (2007).

Cir. 1997); United States v. Simmons, 172 F.3d 775 at 778. This holds true even if the traffic stop was conducted as part of a larger pre-planned operation. See United States v. Ibarra, 345 F.3d 711 (9th Cir. 2003).

Thus, the question for the court to answer in this case is whether the officers who stopped the defendant's vehicle on February 24, 2007, had probable cause to believe that the vehicle had committed a traffic offense. See Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004) ("Thus, the only question for purposes of examining the constitutionality of Reynolds' stop is: Did Reynolds have probable cause to believe that a traffic violation had occurred?").

Officer Isler had probable cause to believe that the RV had committed a traffic offense because he saw the RV swerving and failing to maintain itself in a lane of traffic and because he saw the vehicle slow down in such a manner that it impeded traffic. Failing to maintain a lane of traffic and impeding traffic are both violation of Alabama traffic law.[2] Isler's personal observations provided him with the probable cause he required to justify the traffic stop.

Even if an officer does not have probable cause to believe that a traffic offense has been committed, the officer may stop a vehicle if he has observed facts which create a reasonable, articulable, objective belief that an individual may be involved in illegal activity. In such a case, the officer may may conduct a limited, investigatory stop of the person or vehicle without obtaining a warrant. See Terry v. Ohio, 392 U.S. 1 (1968). Terry permits investigatory stops of vehicles as well as of pedestrians. See United States v. Williams, 876 F.3d 1521, 1524 (11th Cir. 1989). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing

---

[2] Ala. Code 1975 § 32-5A-88(1) requires that drivers stay in a single lane while driving on a roadway laned for traffic. Ala. Code 1975 § 32-5A-174(a) prohibits driving at a speed so slow it impedes the normal and reasonable movement of traffic.

considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (citing United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). The court must consider the "totality of the circumstances" and not look at facts in isolation from each other. United States v. Arvizu, 534 U.S. 266, 274 (2002).

In this case, Isler had reasonable suspicion to conduct a traffic stop of the vehicle because he observed the vehicle weaving back and forth across the roadway and drifting to the outside lane while slowing down. These observations gave him at least reasonable suspicion to believe that the driver of the vehicle was under the influence of alcohol or another controlled substance, which is a violation of Alabama law.[3] Because alcohol or other drugs can affect the ability of a driver to maintain control of a vehicle, seeing the RV swerving back and forth was sufficient to give Isler the "minimal level of justification for making the stop." Wardlow, 528 U.S. at 124.

Despite the personal observations of Isler, defendant Walker argues that the stop was unlawful and all evidence must be suppressed because Isler was outside of his jurisdiction when he observed the RV and conducted the traffic stop. Walker argues that Isler, as a Midland City Police Officer, was limited in his exercise of authority to the "police jurisdiction" of Midland City, as described in Ala. Code 1975 § 11-40-10, which defines "police jurisdiction" for a city of less than 6000 inhabitants as extending to the adjoining territory within a mile and a half of the corporate limits of the city. However, Ala. Code 1975 § 11-40-10, does not actually define the authority of police officers to make arrests and enforce traffic laws and is the wrong statute to consider.

---

[3] Ala. Code 1975 § 32-5A-191 outlaws driving while under the influence of alcohol or other controlled substances.

Ala. Code 1975 § 15-10-1 states that municipal police officers have the authority to make arrests anywhere within the limits of the county where the city is located. Ala. Code 1975 § 15-5-30 also provides municipal police officers with the authority to conduct an investigatory stop anywhere within the county where the city is located. Finally, Ala. Code 1975 § 32-5-310 imposes upon all law enforcement officers in the state the duty to enforce the traffic code and stop violators whenever they observe a violation. Notably this provision does not pose any geographic limits on the duty to enforce the traffic laws. As a Midland City Police Officer, located in Dale County, Isler would have the authority to make arrests anywhere in Dale County and a duty to enforce the traffic laws as he observed violations. This authority and duty is not limited to just the area one and a half miles outside the Midland City limits.

Isler observed the traffic violations while on patrol in Dale County, and then pursuant to his duty as required by the law, he took immediate steps to enforce the traffic laws by stopping the vehicle. Due to concerns about finding a safe location for the RV to pull over, Isler did not complete the traffic stop until the RV had apparently passed into Dothan in Houston County. However, the infraction occurred in Dale County and Isler's response to it properly began in Dale County. Isler also called for and received assistance from Dothan Police Department Officers who responded to the scene and clearly had authority in Houston County.

Even if the stop by Isler was technically outside of his jurisdiction and improper pursuant to Alabama law, that does not result in a Fourth Amendment violation requiring suppression. The question for the Court is not whether under state law Isler acted properly; the question is whether he acted properly under the Fourth Amendment and had probable cause to believe a traffic violation had occurred. In <u>Whren v. United States</u>, 517 U.S. 806 (1996), the Supreme Court considered a similar

scenario. There, plainsclothes police officers conducted a traffic stop in the District of Columbia even though by making the stop they were violating police regulations. Id., 517 U.S. at 815. The Supreme Court held that the subjective motivations of the officers were irrelevant and it did not matter that they had violated police regulations. The only question to answer was whether they objectively had probable cause to believe a traffic violation had been committed. Id., 517 U.S. at 813.

Similarly, the Supreme Court followed this same principle in the recently decided case of Virginia v. Moore, ___ S.Ct.___, 2008 WL 1805745(2008), in which the Supreme Court upheld a search incident to arrest even though the arrest was unlawful pursuant to Virginia law. In that case, a vehicle was searched after the driver was arrested for a misdemeanor traffic violation. Under Virginia law, it was improper for the officers to arrest the driver for a misdemeanor traffic violation. However, the Supreme Court found that the evidence found during the search of the vehicle was admissible even though the arrest violated Virginia law. The Supreme Court reasoned that the standard under the Fourth Amendment was whether the arrest was lawful, which only meant whether the arrest was based on probable cause. Id. at *8. The Supreme Court further stated that when considering whether a search was permissible under the Fourth Amendment, "it is not the province of the Fourth Amendment to enforce state law." Id. Therefore, despite the fact that the police had made an illegal arrest under state law, because the arrest was based on probable cause, it was not an illegal arrest under the Fourth Amendment and the evidence seized incident to that arrest was admissible. Id. at *9.

Because Isler conducted the traffic stop based on probable cause, consistent with Whren and Virginia v. Moore, whether or not his actions violated state law is irrelevant when determining whether to exclude the evidence pursuant to the Fourth Amendment.

Finally, defendant Walker argues that Isler lacked the authority to conduct a traffic stop because he was only a Reserve Officer and lacked arrest powers under Alabama law. This argument is factually incorrect. Isler was a full-time, certified police officer with Midland City on February 24, 2007, and was not a Reserve Officer as claimed by the defendant.

Because Isler had probable cause and reasonable suspicion to believe that an offense was being committed by the occupants of the RV, his actions in stopping the RV did not violate the Fourth Amendment.

***II. After the lawful stop of the RV, officers developed probable cause to permit a warrantless search of the RV.***

Generally the Fourth Amendment requires that a warrant based on probable cause and issued by a neutral magistrate be obtained by law enforcement prior to conducting a search. However, there are exceptions to this rule. Law enforcement may search a motor vehicle without a warrant if there is probable cause to believe that the vehicle contains evidence of a crime and the vehicle is mobile, even if exigent circumstances do not exist. See Maryland v. Dyson, 527 U.S. 465, 466-467 (1999); United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2005). "Probable cause for a search exists when under the totality of the circumstances there is a fair probability that contraband or evidence of crime will be found in a particular place." United States v. Magluta, 418 F.3d 1166, 1182 (11th Cir. 2005).

After stopping the RV, Isler approached the door to the RV to speak to the driver. When the door opened, Isler smelled a distinct odor of marijuana coming from the RV. Smelling an odor of marijuana coming from a vehicle is sufficient to establish probable cause to support a warrantless search of the vehicle. See United States v. Johns, 469 U.S. 478, 482 (1985) ("After the officers came closer and detected the distinct odor of marijuana, they had probable cause to believe that the vehicle contained contraband."); United States v. Lueck, 678 F.2d 895, 903 (11th Cir. 1982). And if probable cause exists to search the vehicle, police may search any container in the vehicle which may contain the object of the search, including the trunk. United States v. Ross, 456 U.S. 798, 825 (1982); United States v. Mathis, 239 Fed.Appx. 513, 515 (11th Cir. 2007). Thus, once Isler smelled the odor of marijuana coming from the vehicle, he had sufficient probable cause to search the RV and any container in it for illegal drugs.

The police also developed probable cause through the use of a trained canine to conduct a free-air sniff of the vehicle. The alert of a drug sniffing canine when sniffing a vehicle is sufficient for probable cause to search a vehicle. United States v. Tamari, 454 F.3d 1264-1265 (11th Cir., 2006); United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997); United States v. Porter, 221 Fed.Appx. 836, 840 (11th Cir. 2007). The use of a drug detecting dog to sniff the exterior of a vehicle during a traffic stop is also not a search that implicates the Fourth Amendment, so no probable cause is required to conduct the sniff. See Illinois v. Calles, 543 U.S. 405, 409 (2005); United States v. Glinton, 154 U.S. F.3d 1245, 1257 (11th Cir. 1998); United States v. Holloman, 113 F.3d at 194.

A traffic stop may only last as long as is reasonably necessary to complete the purpose of the stop. However, when an officer develops reasonable suspicion that the motorist is involved in

additional illegal activity, the officer may lengthen the stop to investigation those suspicions. See United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999). The odor of marijuana, the anxious behavior of the driver, and the fact that the RV was an out of state rental provided Isler with sufficient reasonable suspicion to extend the traffic stop to investigate his suspicions that the passengers were involved in illegal activity. In doing so, Isler called for a drug sniffing canine. The records of the dispatch call show that the canine arrived on the scene approximately 15 minutes after Isler first stopped the RV. This is not an unreasonable amount of time to wait for a canine to arrive. The canine then alerted on the vehicle providing probable cause. Three minutes after the arrival of the canine, the dispatch log shows that Isler received verification of the vehicle's VIN number.

At 8:45 pm, 47 minutes after the stop began, Isler notified his dispatch that he had found marijuana, cash, and a shotgun, providing probable cause to arrest the defendants. This amount of time is not unreasonably long for an initial stop to occur, then for a canine team to be summoned and arrive, for the canine to conduct a sniff, and then for the police to search an RV. The length of time is similar to that in other Eleventh Circuit cases. See United States v. Williams, 238 Fed.Appx. 566, 567-568 (11th Cir. 2007) (upholding traffic stop that lasted 37 minutes, of which 13 minutes were waiting for a canine to arrive); United States v. Hardy, 855 F.2d 753, 761 (11th Cir. 1988) (investigatory traffic stop involving the use of a drug dog that lasted 50 minutes not unreasonably long); United States v. Gil, 204 F.3d 1347, 1350 (11th Cir. 2000) (75 minuted investigatory detention of motorist while residence was searched was not unreasonably long). The police properly extended the investigatory portion of the stop only as long as was necessary to confirm or dispel the suspicions of illegal activity; as a result the length of the stop was reasonable. See United States v. Hardy, 855 F.2d at 759.

Because the police developed probable cause to believe there was evidence of illegal activity in the RV, the police were permitted to conduct a search of the RV.

WHEREFORE, for the reasons described above, the United States respectfully requests that the Defendant's Motion to Suppress be DENIED.

Respectfully submitted this 2nd day of May, 2008.

                LEURA G. CANARY
                UNITED STATES ATTORNEY

                /s/ Matthew W. Shepherd
                MATTHEW W. SHEPHERD
                Assistant United States Attorney
                131 Clayton Street
                Montgomery, Alabama 36104
                (334) 223-7280
                (334) 223-7135 Fax
                matthew.shepherd@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 01:08CR00029-MEF-TFM |
| | ) | |
| LEMONT ISRAEL NORWOOD, et al. | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Lee Knowles, Esq., attorney for defendant Lemont Israel Norwood, and to Derek Yarbrough, Esq., attorney for defendant Jason Everett Walker.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Matthew W. Shepherd
MATTHEW W. SHEPHERD
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
(334) 223-7280
(334) 223-7135 Fax
matthew.shepherd@usdoj.gov