**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:08cr29-MEF |
| | ) | |
| LEMONT ISRAEL NORWOOD and | ) | |
| JASON EVERETT WALKER | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On February 12, 2008, the Middle District of Alabama Grand Jury returned a two count indictment against defendants, Lemont Israel Norwood ("Norwood") and Jason Everett Walker ("Walker"). Count one of the indictment alleges Norwood and Walker, while aiding and abetting each other, did knowingly and intentionally possess with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2. Count two of the indictment alleges Norwood and Walker, while aiding and abetting each other, did knowingly use and carry firearms, during and in relation to, and in furtherance of, a drug trafficking crime for which they may be prosecuted in a Court of the United States. Defendants argue the stop of the rented vehicle in which they were traveling, and the search thereof, violated the Fourth Amendment right to be free from unreasonable searches and seizures. *See* Doc. # # 30, 31 *Motions to Suppress*. For the reasons below the Magistrate Judge recommends that the District Court DENY the motion to suppress.

**I. FACTUAL BACKGROUND**

On Saturday, February 24, 2007, James Isler ("Isler"), an officer with the Midland City Police Department, was on patrol shortly before 8:00 a.m. Isler positioned his marked vehicle in the median of U.S. Highway 231 where he could monitor all four lanes of traffic, and where his car was visible to all passing motorists. Isler saw a very large brown recreational vehicle ("RV"), "about the size of a Greyhound bus," traveling southbound. The RV was in the right lane for slower traffic, and drifted into the emergency lane and then back to the center line. Isler decided to follow the vehicle out of concerns for driver exhaustion, a driver under the influence, or vehicle malfunction. The RV was moving approximately 15 to 20 miles per hour below the posted speed limit, and Isler watched as it continued to drift into the emergency lane. Isler decided to pull the vehicle over, but did not do so immediately because there was insufficient road shoulder for a safe traffic stop. Isler continued to follow the vehicle out of Midland City into unincorporated areas of Dale County, then into Houston County, entering the city limits of Dothan. Isler turned on his lights shortly after entering Dothan, intending for the RV to stop in a large parking lot. The RV continued approximately one half mile past the parking lot where Isler intended to make the stop.

When the RV did pull over, Isler approached the RV from the passenger side. When Norwood opened the door Isler could smell a distinct odor of marijuana. Isler asked the driver, Norwood, to exit the RV. Norwood questioned the reason for the stop, and Isler explained the RV was weaving. Norwood responded the vehicle was not his, but rented by the passenger, Walker. Norwood also explained the RV was weaving because it was top heavy. Isler checked Norwood's drivers license and determined it was current. Isler went

back to the RV to speak with Walker, who was still in the RV. Walker appeared too fatigued and groggy to respond to his questions. Again, smelling marijuana, Isler had Walker come to the patrol car. Norwood then became aggravated and again challenged the basis for the traffic stop. At this point, Isler, Norwood and Walker were in the patrol car, and Isler called the Dothan police to request backup and a K-9 unit.

When the Dothan K-9 unit arrived approximately ten minutes later, the Dothan officers guided the dog into the RV. Isler remained with defendants at the patrol car, but saw the dog alert on the vehicle door. The Dothan officer working with the dog came to inform Isler of the dog's alert, prompting Isler to formally inform defendants of that fact, as well as their *Miranda* rights. Despite Defendants telling Isler there wasn't anything illegal in the vehicle, Isler authorized the Dothan officers to conduct a search of the vehicle.

The search revealed approximately sixteen pounds of marijuana wrapped in several vacuum sealed bundles underneath the refrigerator. Upon discovery of the marijuana, both defendants were placed in handcuffs. As the search continued, officers found a loaded 12-gauge pump shotgun, a loaded Ruger 9mm, marijuana residue in the sink, a partially burnt marijuana cigar, a vacuum sealer, an industrial grade vacuum cleaner which contained piles of leaves and seeds, and dryer sheets. Isler testified dryer sheets are sometimes wrapped in bundles of marijuana to conceal the odor. Officers also found small pieces of notepaper with figures written on them, "as if adding and subtracting money sales." A little over three thousand dollars in cash was found in Norwood's trouser pocket when Isler conducted a safety search of his person. Isler issued a written warning to Norwood for failure to maintain

a lane.[1]

## II. DISCUSSION

Norwood's *Motion to Suppress Evidence* (Doc. #30), challenges the search of his person and the RV as violations of the Fourth and Fourteenth Amendments to the Untied States Constitution. Walker raises the same challenges, as well as the initial stop of the RV and the subsequent detention prior to the search. *See Motion to Suppress Evidence* (Doc. #31).

### The Stop

Isler's unrefuted testimony establishes the RV crossed the right line into the emergency lane. He also stated considerations in his decision to further observe the RV were the facts that the weather was clear, it was a Saturday morning (on a main beach route), the slower rate of travel, and the size of the vehicle. The Eleventh Circuit has supported officer observation and stops of weaving vehicles, as weaving is a clear indicator of driver fatigue or intoxication. *United States v. Harris,* 928 F.3d 1113, 1116-17 (1991). The Court finds Isler acted reasonably in deciding to follow and stop a weaving vehicle "the size of a Greyhound bus" on a weekend morning when there could reasonably be a hungover or intoxicated driver at the wheel. Isler's decision to further observe and stop the RV is justifiable as a valid public safety precaution by law enforcement. *Harris, id*. at 1117.

### The Detention and Search

---

[1] State law requires drives to stay in a single lane while driving on a roadway laned for traffic. *See* § 32-5A-88(1) Ala. Code 1975.

Isler stated he smelled marijuana immediately after Norwood opened the door to the RV. This is credible testimony, given Isler's years of experience and training in law enforcement. Further, photographs submitted into evidence show a partially burnt marijuana cigar which was found near the front of the RV, plus several pounds of marijuana, and residue in various locations throughout. The Supreme Court permits detention for investigative purposes if a police officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1585 (1989); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968). The odor of marijuana emanating from a weaving vehicle provides an articulable suspicion for Isler to detain and speak with the occupants of the vehicle. *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990) (officer should be able to point to specific and articulable facts which, taken with rational inferences from those facts, warrant the intrusion of law enforcement). The Court finds Isler's actions were fully supported by the circumstances of the stop and his initial contact with defendants.

Upon smelling the marijuana, Isler's call to the Dothan Police Department for backup and a K-9 unit was appropriate, given his presence in Dothan. The unit arrived within ten minutes, whereupon the canine, under the guidance of his trained handler from the Dothan squad, alerted on the door to the RV. The Eleventh Circuit has "long recognized that 'probable cause arises when a drug-trained canine alerts to drugs.'" *United States v. Tamari*, 454 F.3d 1259 (11th Cir. 2006). Thus, the canine's detection of drugs led to a full search of the RV, the discovery of marijuana, and various paraphernalia associated with the drug trade.

The testimony in this case fully supports Isler's stop of the RV and subsequent search by the Dothan K-9 unit. Isler's stop was a reasonable reaction to seeing a large vehicle weaving. *Harris, id.* His decision to detain the RV and summon a K-9 unit was an appropriate course of action for a trained law enforcement officer who smelled marijuana at the door of the RV. The specific fact of a marijuana odor leads to a rational inference that marijuana is present. *Tapia*, *id.* The expeditious search was based upon sufficient probable cause and confirmed the presence of sixteen pounds of marijuana, firearms, and other drug trade paraphernalia. *Tamari, id*; *see also United States v. Baggett*, 954 F.2d 674, 677 (11th Cir. 1992) (noting common nature of firearms in drug trade).

The Court sees no basis to suppress the evidence discovered during the search, and will therefore recommend the denial of defendants' motions to suppress evidence.

### III. CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the motion to suppress filed by the defendant be DENIED.

***It is further ORDERED that the parties shall file any objections to the said Recommendation by June 3, 2008.*** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the

Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 21st day of May, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE